**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Donna Siegel Moffa, Esquire
Lisa J. Rodriguez, Esquire
8 Kings Highway West
Haddonfield, NJ 08033
Telephone:  (856) 795-9002
Facsimile:  (856) 795-9887

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett, Esquire
Michael T. Fantini, Esquire
Russell D. Paul, Esquire
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Jared Workman, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated, | : : : : | Civil Action No. 07-cv-1338 |
| Plaintiffs, | : : | |
| vs. | : : : | |
| Menu Foods Limited, Menu Foods Inc., and Menu Foods Midwest Corporation | : : : | |
| Defendants. | : : | |

## MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE WHY A PROTECTIVE ORDER TO SUPERVISE OR LIMIT COMMUNICATIONS WITH ABSENT CLASS MEMBERS SHOULD NOT ISSUE

Dockets.Justia.com

## I.    INTRODUCTION

This case and the approximately eighty (80) related class actions now pending throughout the country involve the largest pet food recall in United States history ("Recall").[1]  The Recall, initially announced by Menu Foods Income Fund and its related entities (collectively "Menu Foods")[2], continues to grow, with an addition to the Recall list of 220 products just announced on May 3, 2007.  Menu Foods has now expanded its own recall on least *five* occasions since it first announced only a "precautionary" recall on March 16, 2007.

According to the American Veterinary Medicine Association ("AVMA") [http://www.avma.org/aa/petfoodrecall/default.asp], the Recall now covers:  pet food of fifteen (15) manufacturers, including Menu Foods; over 122 dog and cat food brands; and approximately 766 different dog and cat food products.  Thousands of dogs and cats have fallen ill or died, and millions of dollars have been spent for the treatment of these pets.

On or about April 5, 2007, Menu Foods instituted what it called an "Insurance Adjuster Call Back" operation on its website and provided the initial schedule for adjuster calls to United States and Canadian consumers.  (Exhibit A).  Other than what the title of the operation implied, it was unknown at that time what information would be sought by Menu Foods or its adjusters, whether Menu Foods would be pursuing releases of claims, whether Menu Foods would provide

---

[1] As this Court is aware, several plaintiffs have filed petitions for coordination or consolidation and transfer pursuant to 28 U.S.C. 1407 before the Judicial Panel on Multidistrict Litigation (the "Panel").  No party disputes that centralization is appropriate.  The majority of plaintiffs have urged the transfer of all related actions to this Court.  The Panel has set the matter for hearing on May 31, 2007 in Las Vegas.

[2] These additional named entities in the various cases include Menu Foods, Inc., Menu Foods Midwest Corp., Menu Foods South Dakota, Inc., Menu Foods Holdings, Inc., Menu Foods Gen Par Ltd., Menu Foods Limited Partnership, and Menu Food Operating Partnership.

disclosure of the pendency of multiple class actions, or whether Menu Foods would attempt to be purely informational with distressed consumers.

Counsel for plaintiffs have since learned that Menu Foods, or its insurance carrier, has retained Crawford & Company ("Crawford") – an Atlanta-based claims management company specializing in class action administration – to conduct class-wide "data collection." (Exhibit B). Menu Foods' questionnaire (attached as Exhibit C) – which it references as both a "Data Collection Form" and a "Claim Form" - is sent to anyone who might have previously called Menu Foods to request information about the Recall or to complain about the illness or loss of his or her pet. (*See* Affidavit of Russell D. Paul filed herewith)  Simply put, the nine-page questionnaire requests information on virtually every detail that could give rise to a claim. Among other things, it asks pet owners to provide their social security number, a statement of cause of death, veterinary information, all diagnosis and treatment information, veterinary bill information, product information, and information on pets' pre-existing conditions and medications. (*Id.*).  In addition, Section VI of the Claim Form asks that the pet owner send "all relevant documents" to Crawford, including all purchase records, credit card statements, the actual pet food "in question," and all veterinary records for each pet (unlimited in time). (*Id.* at 9).

For the following reasons, as discussed more fully below, plaintiffs urge this Court to exercise its inherent authority to protect the absent class members and to prohibit any further coercive communications by Menu Foods with putative class members, including use of the Claim Form, absent Court supervision:

- Menu Foods' Claim Form provides no context to class members.  It fails to disclose the existence of dozens of class actions through which counsel seek to advance the rights of class members.

3

- Menu Foods' Claim Form fails to advise class members that submission of the Form may (and probably will) affect their rights, along with their ability to participate in any class action settlement or judgment.

- Menu Foods' Claim Form does not specifically advise class members of their available options, including consulting their own counsel or allowing their claims to be prosecuted via the class action lawsuit.

- The Claim Form is purely transactional, in that it provides no information *to* class members, and only seeks information *from* them, constituting pre-certification discovery upon the absent class.

- Menu Foods' Claim Form falsely suggests to class members that they must complete the Form to obtain relief for the illness or loss of their pet, whatever Menu Foods has decided that relief might be, based on whatever criteria Menu Foods has chosen by itself to use.

- Menu Foods' Claim Form undermines putative class members' cooperation with counsel. The Form operates as informal, unilateral discovery thru which Menu Foods attempts to make an end run around the discovery rules and the oversight of the Courts.

- Menu Foods' Claim Form does not advise putative class members that participation now could foreclose future rights of recovery.  It also does not outline the potential uses Menu Foods may make of the information supplied, including reducing the number of claimants, adjudicating claims without objective oversight of the Court or plaintiffs' counsel, and providing data to experts to form opinions that may be used against plaintiffs or those similarly situated later.

The Court has recently stayed this action, pending a decision by the Judicial Panel on Multidistrict Litigation on whether coordination or consolidation and transfer of the actions is appropriate.  Plaintiffs, therefore, additionally request that the stay be temporarily lifted solely for the purposes of this emergency Order to Show Cause.

## II.    ARGUMENT

### A.    Legal Standards

Federal Rule of Civil Procedure 23 provides district courts with broad authority to regulate communications between defendants and putative class members prior to class

certification. *See, e.g., Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981) ("The district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *Jenifer v. Del. Solid Waste Auth.*, Nos. 98-270/98-565 MMS, 1999 U.S. Dist. LEXIS 2542, at *8 (D. Del. Feb. 25, 1999) (courts "have the requisite authority to limit contacts with putative class members" under Rule 23); *In re Medtronic, Inc., Implantable Defibrillator Prod. Liab. Litig. (In re Medtronic)*, 434 F. Supp. 2d 729, 730 n.1 (D. Minn. 2006) (holding that the court's duty to protect class members applies even in an MDL proceeding prior to class certification).

While defendants may send truthful, non-coercive communications to absent class members pre-certification, courts are obligated to regulate misleading communications. "It is the responsibility of the court . . . to safeguard [the class] from unauthorized misleading communications . . . Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 845 (2d Cir. 1980). The court bears this responsibility irrespective of, and in addition to, the duty owed to these clients by their respective attorneys. *In re Medtronic*, 434 F. Supp. 2d at 730.

The court need not wait for actual harm to occur. *See, e.g., In re Sch. Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988) ("Rule 23(d) does not, however, require a finding of *actual* harm; it authorizes the imposition of a restricting order to guard against the '*likelihood* of serious abuses.'") (citing *Gulf Oil*, 452 U.S. at 104) (second emphasis added)). Such a restriction on communication "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . such a

weighing should . . . limit[] speech as little as possible, . . . " *Gulf Oil*, 452 U.S. at 101-02
(footnotes omitted).

**B.    Menu Foods' Contacts With Absent Class Members Are Improper**

Courts often restrict defendants' contacts with putative class members where the contacts

seek either to affect the class members' decisions to participate in the litigation or to undermine

class plaintiffs' cooperation with or confidence in class counsel.  Such contacts undermine the

purpose and efficacy of the class action device.  Here, judicial regulation of Menu Foods' data

collection operation is necessary because these communications both omit and solicit critical

information that threaten the rights of potential class members in this litigation.  The Claim Form

is designed to, and does, entice pet owners into foregoing participation in this class action and

the remedies available therein.  *See, e.g., In re Currency Conversion Fee Antitrust Litig. (In re

Currency Conversion Fee)*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (stating that

communications that omit critical information and threaten the choice of remedies available to

class members are "subject to a district court's supervision.").  It is a vehicle for improperly

settling claims and limiting the size of the potential class.  *See, e.g., Jenifer*, 1999 U.S. Dist.

LEXIS 2542, at *9 ("improper communications could diminish the size of the . . . potential class,

and thus, reduce the potential liability") (citations omitted).

**1.    The Claim Form Is Transactional, Not Informational**

Menu Foods' Claim Form is transactional, rather than informational, in nature because it

makes specific inquiries that influence the underlying litigation.  Questions in the Claim Form

pertain to pet owners' potential damages, the cause of a pets' sickness and death, and

consequently, the ability for a pet owner to participate in this litigation as a class member.  The

Claim Form offers no constructive information to pet owners – it provides no information about pending litigation, how to care for a pet that became ill after ingesting recalled pet food, about recalled products and about medical disorders that have been associated with the recall. Courts have held that communications that are "not informational but transactional, and designed to take rights away from [putative class members]" require curative action by the district court. *In re Currency Conversion Fee*, 361 F. Supp. 2d at 254.

In *In re Currency Conversion Fee,* the court held that notices from defendant banks to cardholders indicating that cardholder agreements had changed to include arbitration clauses required court supervision. *Currency Conversion Fee*, 361 F Supp. 2d at 249, 254. Because the arbitration clauses prevented cardholders from bringing claims against their card issuing bank and there was no mention of the pending litigation in notices to cardholders (*Id.* at 249), the court found the notices to be misleading and that the putative class was contacted "for the purpose of altering the status of a pending litigation." *Id.* at 253.

Similarly, the Menu Foods Claim Form garners responses from pet owners that impair, if not forfeit, their claims in this litigation. This Form misleads pet owners to believe that it is the primary mechanism for reimbursing pet owners for their expenses. Indeed, Menu Foods refers to the Claim Form in response to a question posed on its website: "Who is going to pay my vet bills for sickness and death?" (www.menufoods.com/recall/FAQ_Consumers_041607.htm). In addition, the Claim Form administered by Crawford, whose major services include "[l]egal settlement administration, including class action[s]," (Exhibit B), is itself referred to as a "claim form." (Exhibit C at 9). The very character and nature of the Form and the questions it poses prompts pet owners to settle their claims by providing "data" to Crawford rather than through existing litigation.

For example, the Claim Form asks:

- "[What is] the amount of medical bills and/or expenses your pet has incurred to date (Please itemize, including any burial and/or cremation expenses if applicable.)" (Exhibit C at 3).

- "Do you have a copy of the sales receipt for the pet food?" (*Id.* at 5).

- "How many cans and/or pouches of the pet food were purchased?" (*Id.*).

In addition, the Claim Form instructs pet owners to send Crawford "[a]ny records relating to the purchase of the pet food in question, including but not limited to sales receipts, credit card bills and/or other related invoices." *Id.* at 9. The Form fails to properly disclose to the pet owner that such reimbursement may impact pet owners' rights to recover damages in the pending litigation against Menu Foods.

The Claim Form is also designed to disqualify pet owners from pending litigation by eliciting responses relevant to the issue of causation. The questions listed below lure pet owners into providing answers that could preclude class participation, without the pet owner knowing his or her legal claims are at stake.

- "[W]hat was the cause of death, who determined it and when?" (Exhibit C at 2).

- "How many cans and/or pouches did your pet consume?" (*Id.* at 6).

- "Prior to consuming the product, did your pet have any preexisting health conditions? . . . If 'Yes,' please specify they type of condition or disease, date of diagnosis, veterinarian by whom diagnosis was made, treatment (if applicable), date of recovery (if applicable)." (*Id.* at 7).

- "Prior to consuming the product, was your pet on any medications? . . . If 'Yes,' please list medication(s) and date of use." (*Id.* at 8).

8

Furthermore, the Claim Form instructs pet owners to send Crawford "[r]ecords of any veterinarian, clinic and/or other healthcare facility identified in response to this profile form." *Id.* at 9. Again, the Form does not disclose to pet owners that their responses may result in relinquishing potential claims in pending litigation.

### 2.  The Claim Form Is Coercive and Misleading

Menu Foods' one-sided Claim Form is inherently coercive and misleading and is precisely the type of communication that courts have sought to limit. It is falsely presented to pet owners as a necessary process for reimbursement, when in fact it is a unilateral contact with putative class members that directly and significantly affects their claims, without the participation or input of plaintiffs' counsel or the courts. As the Eleventh Circuit has recognized, "[a] unilateral communications scheme . . . is rife with potential for coercion." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir. 1985) (affirming imposition of sanctions on defendant's counsel for soliciting opt-outs). Such unilateral communications have been deemed to deceive and undermine informed participation in class action litigation. "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the fact, without opportunity for rebuttal. The damage from misstatements could well be irreparable." *Id.* at 1203 (citations omitted).

The Claim Form here is particularly misleading because of the information it specifically omits. Nowhere in its nine pages is there any mention that Menu Foods is a party to nationwide litigation or that the litigation concerns the very issues raised in the Claim Form. Courts have held that withholding information about the existence of underlying litigation in unilateral communications with potential class members warrants court intervention. *See, e.g., Ralph*

*Oldsmobile Inc., v. Gen. Motors Corp.*, No. 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 13893, at *12 (S.D.N.Y. Sept. 7, 2001) (finding that communications to putative class members that failed to mention pending litigation were abusive and warranted relief); *In re Sch. Asbestos Litig.*, 842 F.2d at 681, 683 (holding that defendant's failure to indicate involvement in litigation justified court intervention in direct communications with class members). Omitting any reference to pending litigation leads pet owners to falsely believe that the "data" provided to Menu Foods is in no way associated with litigation and plays no role in determining their legal rights.

Moreover, the Claim Form provides no information about plaintiffs' counsel and plaintiffs' counsel received no notice before it was sent to putative class members. Courts have indicated that such information and notice are critical ingredients for permitting unsupervised transactional communications. *See, e.g., Weight Watchers, Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 772 (2d Cir. 1972) (permission to contact potential class members regarding settlement agreements was "subject to the conditions that . . . plaintiff's counsel should receive at least five days notice of the commencement of any such negotiations . . . "); *Ralph Oldsmobile Inc.*, 2001 U.S. Dist. LEXIS 13893 at *16 (indicating that defendant's proposed communication with the potential class was inadequate because "[i]t does not indicate how a [potential class member] may obtain more information about the case or contact plaintiff's counsel.").[3]

---

[3] In addition to the coercive and misleading character of this communication, and the failure to provide information about and notice to plaintiffs' counsel, the Claim Form violates Rule 4.2 of the ABA Model Rules of Professional Conduct and similar state rules of professional conduct. The Claim Form is sent indiscriminately to pet owners, several of whom are named plaintiffs and represented by counsel in lawsuits pending around the nation. Of the forty-five (45) questions posed in the Claim Form, not one is dedicated to whether the recipient pet owner is involved in pending litigation or has legal representation.

Whether it is considered a settlement solicitation or unauthorized absent class discovery, Menu Foods' campaign operates as an end-run around this Court's control under Rule 23(d)(2) of direct notice to the class "for the protection of the members of the class or otherwise for the fair conduct of the action . . . " Thus, Menu Foods' contacts constitute "a solicitation scheme that relegates the essential supervision of the court to the status of an afterthought." *Kleiner*, 751 F.2d at 1202. "The solicitation of exclusions from a pending class action by a defendant *before* the court has determined that the case may proceed as a class action constitutes a serious challenge to the authority of the court to have some control over communications with class members." 5 *Newberg on Class Actions* § 15:19 (4th ed.) (emphasis supplied). Here, Menu Foods has attempted to seize upon the absence of a certified class to sidestep this Court's Rule 23 oversight function.

### C.    Menu Foods Should Be Prohibited From Conducting Unauthorized Discovery Upon the Absent Class

Preventing the continued coercive effect of Menu Foods' data collection campaign is alone a sufficient reason to immediately stop it. However, Menu Foods' data collection from the thousands of consumers who have called the company in distress should also be prohibited because it constitutes unauthorized discovery on these absent class members.

The Claim Form used by Menu Foods is exhaustive in its request for individual information, almost identical in substance and form to detailed interrogatories and document requests. (Exhibit C). Yet, discovery upon the absent class is only authorized in exceptional circumstances and where the proponent of such discovery has satisfied a heavy burden.[4] *See On*

---

[4] Courts have also disallowed discovery questionnaires to the class "because they may constitute a *de facto* "opt-in" provision." *Kern v. Siemens Corp.*, 393 F.3d 120, 125 (2nd Cir. 2004) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986); *McCarthy v. Paine Webber Group, Inc.*, 164 F.R.D. 309, 313 (D. Conn. 1995)). After noting that there is no authority for

*the House Syndication, Inc. v. Federal Express Corp.*, 203 F.R.D. 452, 455 (S.D. Cal. 2001)

(wide-ranging discovery from absent class members undermines the very purpose of class action

suits); *Collins v. Int'l Dairy Queen*, 190 F.R.D. 629, 630-31 (M.D. Ga. 1999) ("absent class-

action plaintiff is not required to do anything"); *Morgan v. United Parcel Serv. of Am., Inc.*,

No.4:94-CV-1184,1998 U.S. Dist. LEXIS 20197, at *3 (E.D. Mo. Oct. 16, 1998) ("strong

showing" required for absent class member discovery); *Redmond v. Moody's Investor Serv.*, No.

92 Civ. 9161 (WK), 1995 U.S. Dist. LEXIS 6277, * 3 (S.D.N.Y May 10, 1995) (discovery of

absent class members regarding individual issues is inappropriate).  When such absent class

members discovery has been permitted, the proponent has been required to demonstrate that:

>  (1) the discovery is not sought to take some undue advantage of class members or with the purpose or effect of harassment or altering membership in the class;
>
>  (2) the discovery is necessary at trial of issues common to the class;
>
>  (3) responding to the discovery requests would not require the assistance of counsel; and
>
>  (4) the discovery seeks information not already known to the proponent.

*See, e.g., On the House Syndication, Inc.*, 203 F.R.D. at 455.

Without court authorization or supervision, Menu Foods has launched a massive

discovery campaign on the absent class.  There is currently no safeguard against an undue

advantage for Menu Foods, alteration of class membership, and certainly no showing that the

requested information is even necessary at this stage.  The data collection campaign appears to

simply be an improper "stratagem to reduce the number of claimants." *Brennan v. Midwestern

United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971).

---

establishing "opt-in" classes, the *Kern* court observed that courts hesitate "to require class
members to file proofs of claim before a liability determination because such a provision
resembles an 'opt-in' procedure." *Id*.

**D. Proposed Remedy**

This Court has a duty to protect the absent class members, to act as a neutral arbiter, and to ensure the honesty, accuracy, and appropriateness of communications between Menu Foods and the Class. Likewise, Class Counsel have a fiduciary duty to potential class members. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 801 (3d Cir. 1995); *In re McKesson HBOC, Inc. Sec. Litig.,* 126 F. Supp. 2d 1239, 1245-46 (N.D. Cal 2000).[5] Menu Foods' unilateral campaign makes it impossible for either the Court or Class Counsel to carry out their responsibilities to protect the Class.

To remedy the potential harm to the Class and to supervise such activities in the future, plaintiffs respectfully seek an order from this Court granting the following relief:

(1) Deem null and void any releases executed by pet owners in favor of Menu Foods as a result of direct communications by Menu Foods with affected pet owners;

(2) Require Menu Foods to produce within five (5) days copies of all communications to and from named representatives and absent class members, along with any internal Menu Foods' documents relating to Menu Foods' contacts with absent class members *relating to this litigation*, including copies of all veterinary records or bills, all other documents or items requested and received by Menu Foods through its Claim Form, and any releases obtained from absent class members;

(3) Require Menu Foods to produce within five (5) days the results of any tests performed on any pet food received from any named representatives and absent class members as a result of the Claim Form, to maintain the integrity of such pet food and to cease conducting any additional testing on such pet food until such time as plaintiffs' counsel can coordinate with Menu Foods the shared custody of such pet food.

(4) Require Menu Foods to obtain the Court's approval prior to sending any further communications to absent class members;

---

[5] A "constructive attorney-client relationship" exists between class counsel and potential class members. Newberg on Class Actions § 15:14 (4th ed.); *see Kleiner*, 751 F.2d at 1207 n.28.

(5) Authorize Class counsel to communicate directly (by letter) with any absent class member who has received any communication from Menu Foods regarding this litigation, to advise them of the status of the litigation, and to explain Class Counsel's perspective on the litigation; and

(6) Any information obtained from named representatives or absent class members through Menu Foods' data collection campaign shall not be used by Menu Foods for any litigation purpose.

## III.    <u>CONCLUSION</u>

Based on the foregoing, plaintiffs respectfully request that this Court enter an order prohibiting any further communications with class members through Menu Foods' Claim Form.

Dated:  May 7, 2007                     Respectfully submitted,


By:____s/Lisa J. Rodriguez_____
         Lisa J. Rodriguez

Donna Siegel Moffa, Esquire
Lisa J. Rodriguez, Esquire
**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
8 Kings Highway West
Haddonfield, NJ 08033
Telephone:  (856) 795-9002
Facsimile:  (856) 795-9887

Sherrie R. Savett, Esquire
Michael T. Fantini, Esquire
Russell D. Paul, Esquire
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

*Attorneys for Plaintiff and the Class*

# EXHIBIT A

**Insurance adjuster consumer call back operations:**

|  | US | Canada Outside Quebec | Canada Quebec |
|---|---|---|---|
| **Friday April 6, 2007** | Morning Only | Statutory Holiday No Calls | Statutory Holiday No Calls |
| **Saturday April 7, 2007** | All Day | All Day | All Day |
| **Sunday April 8, 2007** | Easter Sunday No Calls | Easter Sunday No Calls | Easter Sunday No Calls |
| **Monday April 9, 2007** | All Day | All Day | Statutory Holiday No Calls |

# EXHIBIT B



**Crawford**®
EXCELLENCE IN EVERYTHING WE TOUCH™    GLOBAL

Stock Quote: CRDA 6.40 -0.11 CRDB 6.61 -0.04 (20 min. delay)    May 04, 2007



Staying
In Touch

**Global Home/Services**

**About Crawford**
- Company Profile
- Executive Management
- Vision and Mission Statement
- Community Involvement
- Life at Crawford
- Business Conduct Code

**Investor Relations**

**News**

**Careers**

**Directories**

**Office Locator**

**Training**

**E-Library**

**Billing Policies**

**Corporate Governance**

**Contact Us**

[ Search ]

**Popular Links**



2006 Annual Report

# Company Profile

Based in Atlanta, Georgia, Crawford & Company is the world's largest independent provider of claims management solutions to insurance companies and self-insured entities, with a global network of more than 700 offices in 63 countries.

Major service lines include:

- Property and casualty claims management
- Integrated claims and medical management for workers' compensation
- Legal settlement administration, including class action and warranty inspections
- Risk management information services

The Company's shares are traded on the NYSE under the symbols CRDA and CRDB.



Crawford & Company
Corporate Headquarters
Atlanta, GA

Global Home | About Crawford | Investor Relations | News | Careers | Directories | Office Locator | Training | E-Library | Billing Policies | Corp. Gov. | Contact Us |
© Crawford & Company 2007 | Terms and Conditions | Privacy Statement

# EXHIBIT C

## CRAWFORD & COMPANY DATA COLLECTION FORM
## RE: MENU FOODS INCOME FUND'S PRODUCT RECALL

* Please complete separate form for each pet claimed to have been affected by pet food manufactured by Menu Foods Income Fund.

**Call ID Number provided by Crawford & Company (if known):**

## I. PET OWNER INFORMATION

\*     **Name of Pet:** _____

1.    Name of Pet Owner: _____

2.    Current Address: _____

3.    Telephone Number: _____

4.    Social Security Number: _____

5.    What type of pet does this concern?

     Cat _____      Dog _____      Other _____

6.    Are you the owner of the pet?

     Yes _____      No _____      If no, who owns the pet? _____

7.    Are you claiming that your pet has or may develop bodily injury as a result of consuming pet food manufactured by Menu Foods Income Fund?

     Yes _____      No _____      If no, go to Question 15

8.    What injuries do you believe your pet has sustained as a result of consuming pet food manufactured by Menu Food Income Fund (Please check all that apply)?

_____ Vomiting
_____ Lack of appetite
_____ Increased thirst
_____ Frequent urination and increase in volume
_____ Depression / Decrease in interest
_____ Ulcers in the mouth
_____ Urine-like breath odor
_____ Poor hair coat
_____ Death
_____ Others: _____

9.    If your pet has died, please answer the following:

a.    Date of Death (month/date/year):
       _____

b.    Was a post-mortem exam performed

       Yes _____          No _____

c.    Was the cause of death determined?

       Yes _____          No _____

If "Yes," what was the cause of death, who determined it and when?

| Cause of Death | Veterinarian | Date of Determination |
|---|---|---|
| | | |

10.   When did your pet begin to exhibit the above mentioned symptoms (month/date/year)?

_____

11.   Have you contacted your veterinarian?

       Yes _____          No _____

12. Has your pet been seen and/or treated by a veterinarian or health care provider subsequent to consuming pet food manufactured by Menu Foods Income Fund?

Yes _____          No _____

If "Yes," please list the name, address and telephone of each veterinarian, date of treatment (if any) and diagnosis.

| Veterinarian | Address | Telephone Number | Date of Treatment | Diagnosis |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

13. What (if any) instructions were given to you by your veterinarian?_____

_____

_____

14. Please list the amount of medical bills and/or expenses your pet has incurred to date (Please itemize, including any burial and/or cremation expenses if applicable). _____

_____

_____

## II.  PRODUCT INFORMATION

15. What type of pet food does this claim concern?

Cat _____          Dog _____

16. What is the name of the pet food (product description)? _____

17.    What brand is the pet food (Please circle below)?

| Cat: | Americas Choice, Preferred Pets |
|---|---|
| | Authority |
| | Best Choice |
| | Companion |
| | Compliments |
| | Demoulas Market Basket |
| | Eukanuba |
| | Fine Feline Cat |
| | Food Lion |
| | Foodtown |
| | Giant Companion |
| | Hannaford |
| | Hill Country Fare |
| | Hy-Vee |
| | Iams |
| | Laura Lynn |
| | Li'l Red |
| | Loving Meals |
| | Meijer's Main Choice |
| | Nutriplan |
| | Nutro Max Gourmet Classics |
| | Nutro Natural Choice |
| | Paws |
| | Pet Pride |
| | Presidents Choice |
| | Price Chopper |
| | Priority US |
| | Save-A-Lot |
| | Schnucks |
| | Science Diet Feline Savory Cuts Cans |
| | Sophistacat |
| | Special Kitty Canada |
| | Special Kitty US |
| | Springfield Prize |
| | Sprout |
| | Stop & Shop Companion |
| | Tops Companion |
| | Wegmans |
| | Weis Total Pet |
| | Western Family US |
| | White Rose |
| | Winn Dixie |

| Dog: | Americas Choice, Preferred Pets |
|---|---|
| | Authority |
| | Award |
| | Best Choice |
| | Big Bet |
| | Big Red |
| | Bloom |
| | Wegmans Bruiser |
| | Cadillac |
| | Companion |
| | Demoulas Market Basket |
| | Eukanuba |
| | Food Lion |
| | Giant Companion |
| | Great Choice |
| | Hannaford |
| | Hill Country Fare |
| | Hy-VeeIams |
| | Laura Lynn |
| | Loving Meals |
| | Meijers Main Choice |
| | Mighty Dog Pouch |
| | Mixables |
| | Nutriplan |
| | Nutro Max |
| | Nutro Natural Choice |
| | Nutro Ultra |
| | Nutro |
| | Ol'Roy Canada |
| | Ol'Roy US |
| | Paws |
| | Pet Essentials |
| | Pet Pride - Good n Meaty |
| | Presidents Choice |
| | Price Chopper |
| | Priority Canada |
| | Priority US |
| | Publix |
| | Roche Brothers |
| | Save-A-Lot |
| | Schnucks |
| | Shep Dog |
| | Springsfield Prize |
| | Sprout |
| | Stater Brothers |
| | Weis Total Pet |
| | Western Family US |
| | White Rose |
| | Winn Dixie |

18.    Is the pet food packaged in a can or a pouch?

      Can: _____        Pouch: _____

19.    What is the size of the can or pouch (in ounces)? _____

20.    Please list the UPC of each can and/or pouch fed to your pet. _____

21.    When was the pet food manufactured (The manufacture date can be found on the bottom of the can or the back of the pouch)? _____

### III. PURCHASE INFORMATION

22.    Did you purchase the pet food?

      Yes _____       No _____    If no, who purchased it? _____

23.    Where was the pet food purchased (Please list store name and address)?

_____

_____

24.    When was the pet food purchased (month/date/year)? _____

25.    Do you have a copy of the sales receipt for the pet food?

      Yes _____       No _____

26.    How many cans and/or pouches of the pet food were purchased?

_____

## IV. USE INFORMATION

27.    Did you feed the pet food to your pet?

   Yes _____        No _____    If no, who fed it to your pet?_____

28.    When was the pet food fed to your pet (month/date/year)? _____

29.    Was this the first time that your pet had consumed this pet food?

   Yes _____        No _____

   If no, how long had your pet been consuming the pet food (months)? _____

30.    How many cans and/or pouches did your pet consume? _____

31.    Are you currently in possession of the can(s) and/or pouch(es)

   Yes _____        No _____

   If "Yes," preserve all opened and unopened can(s) and/or pouch(es) in question.

32.    How many can(s) and/or pouch(es) do you have in your possession?

   Can(s) _____        Pouch(es) _____

33.    How many of the can(s) and or pouch(es) in your possession are <u>open</u>:

   Can(s) _____        Pouch(es) _____

34.    How many of the can(s) and or pouch(es) in your possession are <u>unopened</u>:

   Can(s) _____        Pouch(es) _____

35.    Are you in possession of any open and/or unused <u>pet food</u>?

Yes _____          No _____

If "Yes" preserve all open and/or unused pet food in double-bagged sealable plastic and store in the freezer.

36.    Did you return any open and/or unused can(s), pouch(es) and/or pet food to the store?

Yes _____          No _____

If "Yes," where and when? _____

## V. PET MEDICAL INFORMATION

37.    Breed of Pet: _____

38.    Date of birth: _____

39.    Sex:   Male _____          Female _____

40.    Prior to consuming the product, did your pet have any preexisting health conditions?

Yes _____          No _____

41.    If "Yes," please specify the type of condition or disease, date of diagnosis, veterinarian by whom diagnosis was made, treatment (if applicable), date of recovery (if applicable).

| Condition/Disease | Date of Diagnosis | Veterinarian | Treatment | Date of Recovery |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

42.    Prior to consuming the product, was your pet on any medications?

Yes _____    No _____

43.    If "Yes," please list medication(s) and date of use.

| Medication | Date of Use |
|---|---|
|  |  |
|  |  |

44.    Please list the names and addresses of each of your pet's current veterinarian.

| Name | Address |
|---|---|
|  |  |
|  |  |

45.    Please list the names and addresses of each clinic or healthcare facility that your pet has received treatment in the last ninety (90) days.

| Clinic / Healthcare Facility | Address |
|---|---|
|  |  |
|  |  |

## VI. RELEVANT DOCUMENTS

Please send all relevant documents and materials, including the following:

- Any records relating to the purchase of the pet food in question, including but not limited to sales receipts, credit card bills and/or other related invoices.

- Can(s) and/or pouch(es) of the pet food in question. (Please ensure they are fully cleaned prior to sending to avoid delays at the post office).

  If there is still product in the can our pouch, please retain the product in a double-sealed bag in your freezer. Do not send cat or dog food in the mail.

- Records of any veterinarian, clinic and/or other healthcare facility identified in response to this profile form.

Please retain a copy of these documents for your own records.

---

Please return this claim form and all relevant documents to:

**Crawford & Company**
**Menu Foods Recall**
**133 Weber Street North, Suite 3-514**
**Waterloo, ON**
**N2J 3G9**