## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Jared Workman, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.      07 CV 01338 |
| Menu Foods Limited, Menu Foods Inc., and Menu Foods Midwest Corporation | ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS' BRIEF IN RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION TO SHOW CAUSE FOR A PROTECTIVE ORDER

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants, MENU FOODS LIMITED, MENU FOODS INC. and MENU FOODS MIDWEST CORPORATION (collectively referred to as "Menu Foods"), submit their brief in response and opposition to Plaintiffs' Motion To Show Cause for a Protective Order. In support thereof, Defendants set forth the following:

### I. INTRODUCTION

On Wednesday, May 2, 2007, this Honorable Court entered an order staying the above-captioned actions "until the Joint Panel on Multidistrict Litigation issues a decision on the transfer and consolidation of motions currently pending before it in MDL-1850, In re Pet Food Product Liability Litigation." The following Monday, May 7, 2007, Plaintiffs filed their Motion for an Order to Show Cause Why a Protective Order Should Not be Issued Barring Defendants from Further Communications with Absent Class Members. Plaintiffs requested "that the stay be temporarily lifted solely for the purposes of [Plaintiffs'] Emergency Order to Show Cause."

1

Dockets.Justia.com

For the reasons set forth below, Defendants respectfully request an Order denying Plaintiffs' request that the Stay Order be lifted and striking Plaintiffs' Motion. In the alternative, Defendants respectfully request this Court to enter an Order Denying Plaintiffs' Motion.

Plaintiffs filed their Motion for an Order to Show Cause for a Protective Order a mere three (3) business days after this Court entered the Stay Order. It is unreasonable for Plaintiffs to request that the Stay Order be lifted "solely" for the limited purpose of Plaintiffs' Motion. The Stay Order is clearly captioned "Order Granting Defendants' Motion to Stay **All Proceedings** (emphasis added)." *See* Order Granting Defendants' Motion to Stay All Proceedings attached hereto as Exhibit A. "All proceedings" shall include all Motions including the present Motion.

The communication that Plaintiffs seek to bar, as referenced in their Motion, includes Menu Foods' Data Collection Form. *See* Data Collection Form attached hereto as Exhibit B. Menu Foods' Data Collection Form has been posted on a website since March 22, 2007. On April 11, 2007, Plaintiffs' counsel attended a meeting at the offices of attorneys for the Defendants, at which time Plaintiffs' attorneys were informed that Menu Foods was posting the Data Collection Form on a website. Therefore, Plaintiffs' attorneys were aware that Menu Foods was communicating with claimants for over one (1) month. Yet, Plaintiffs failed to file this Motion until after this Court entered an order staying the above-captioned matter.

Finally, Plaintiffs filed their Motion as an "Emergency" Motion. Plaintiffs fail to set forth any reason why this Motion shall be deemed an Emergency Motion. As indicated in Plaintiffs' Motion and as set forth above, Menu Foods has openly communicated with claimants regarding their pet's alleged injuries for nearly two (2) months. In addition, on May 31, 2007, the parties are scheduled to appear before the Judicial Panel on Multidistrict Litigation to present

their Motions for transfer and consolidation. Therefore, Plaintiffs shall be barred from filing this Motion or any other Motion until the Judicial Panel has made a determination regarding transfer and consolidation.

## II. FACTUAL BACKGROUND

On March 16, 2007, Menu Foods issued a voluntary recall of certain identified cans and pouches of its "cuts and gravy" style pet food manufactured at two of Menu Foods' facilities. On the same day, the Food and Drug Administration ("FDA"), in cooperation with Menu Foods, initiated an investigation into the cause of consumer complaints following their pets' consumption of the recalled products.

After the initiation of the first recall, Menu Foods received thousands of telephone calls from claimants seeking information regarding the Menu Foods' recall. It was virtually impossible for Menu Foods to respond to every single telephone call. Therefore, Menu Foods hired Crawford & Company ("Crawford") to help answer telephone calls and respond to questions from concerned pet owners. Menu Foods was faced with a crisis situation and needed to collect as much information as possible from claimants. Menu Foods used the Data Collection Form to keep a record of telephone calls in case it needed to return telephone calls or send additional information to claimants. *See* the Affidavit of Mr. Brent Hackett, Assistant Vice President, Catastrophic Services and Operations, at Crawford & Company, attached hereto as Exhibit C. Contrary to what Plaintiffs contend, the Data Collection Form was not mailed to claimants, but rather posted on a website - www.claimsalert.ca/menufoods - which claimants could download and complete if they chose to do so. *See* Exhibit C. In a few instances, Menu Foods received urgent requests from claimants who requested that a copy of the Data Collection

3

Form be sent to them. *See* Exhibit C.   Per the request of these claimants in these limited instances, Menu Foods mailed no more than fifty (50) Data Collection Forms. *See* Exhibit C.

Menu Foods' communication with pet owners has been proper and has never affected a claimant's right to participate in litigation. Menu Foods never solicited any settlement and/or release from claimants. Rather, its communications with claimants have been in response to telephone calls and in an attempt to answer questions and concerns claimants posed. Although Menu Foods informed claimants that Menu Foods wanted to reimburse pet owners for reasonable costs attributed to recalled pet food, no reimbursements have been made and no releases have been executed. Further, the Data Collection Form does not suggest how claimants should proceed. *See* Exhibit C. While Menu Foods submits that this matter is ill-suited for class action treatment, it is cognizant of its obligation to avoid conduct that would undermine the proposed class.

Currently, Menu Foods is in the position to settle claims and seeks to do so as soon as possible. Menu Foods has revised its Data Collection Form and intends to begin using the information claimants have provided to begin settling claims. *See* Claim Packet attached hereto as Exhibit D. The Claim Packet Menu Foods plans to send to claimants includes a list of attorneys organized by state who represent putative class action plaintiffs. Menu Foods will go above and beyond its legal obligation to notify claimants of the existence of class action lawsuits and actually give claimants the names and contact information of attorneys they may contact for legal representation. *See* Exhibit D. In seeking to limit Defendants' communication with claimants, Plaintiffs' motion seeks to deny claimants their right to enter into individual settlements. Many claimants may prefer to avoid litigation.

4

Several motions for transfer and consolidation pursuant to the Multi-District Litigation statute, 28 U.S.C. § 1407 ("MDL statute") are currently pending. On May 31, 2007, the parties are scheduled to appear before the JPML to present oral argument. Menu Foods anticipates that a transfer order will not be issued for approximately four (4) to six (6) weeks after the hearing date. If the cases are consolidated and transferred, then it will likely be another couple of months, at least, before the transferee judge will make a determination on class certification. As stated above, Menu Foods will strongly oppose class certification. Interested claimants should be given the right to enter into settlement agreements with Menu Foods prior to a decision by the transferee judge so that they may be promptly reimbursed for legitimate expenses.

Menu Foods' Claim Packet candidly informs claimants of the effects of settling their claim prior to a determination on class certification and advises claimants of their right to join a proposed class. *See* Exhibit D. Menu Foods also advises claimants to seek the advice of counsel regarding any legal questions. *See* Exhibit D. Menu Foods and pet owners have the right to settle claims. It is essential that Menu Foods gather background information from potential claimants to evaluate whether settlement is appropriate. Menu Foods merely seeks critical information that will allow it to determine the legitimacy of a claim by requesting copies of documents such as veterinarian bills and product batch numbers. By obtaining this information, Menu Foods will have the information it needs to resolve to settle claims. For these reasons, Plaintiffs' motion to show cause for a protective order should be denied.

### III. ARGUMENT

**A.    Menu Foods Is Permitted to Communicate with Proposed Class Members Prior to a Determination on Class Certification.**

5

Courts have consistently held that there is no prohibition against communication, negotiation or settlement with persons who fall within a proposed class prior to class certification. *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 159 (D. D.C. 2002); *Bublitz v. E.I. Dupont De Nemours & Co.*, 196 F. R. D. 545, 547 (S.D. Iowa 2000) (granting defendants' motion to communicate settlement offers to proposed class members prior to determination on class certification); *Weight Watchers of Philadelphia v. Weight Watchers Int.*, 455 F. 2d 770, 773-76 (2nd Cir. 1972). The only limitation in such situations is when the settlements affect the rights of the non-settling class members. *Id.*

Although there is no prohibition against communicating with proposed class members, courts have the authority to limit those communications. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Unless there is a finding of proposed abuse, however, courts have refused to impose restrictions on communication with putative class members. *Gates v. Cook,* 234 F.3d 221 (5th Cir.2000). Imposing such restrictions in the absence of abuse would both be contrary to the federal policy favoring settlement in large, complex disputes and contradict the Supreme Court's holding in *Gulf Oil*, which held:

> "[T]o the extent that the district court is empowered to restrict certain communications in order to prevent frustration of the policies of Rule, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened."

*Gulf Oil*, 452 U.S. at 102. Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties. *Cole v. Marsh*, 560 F. 2d 186, 189 (3d Cir. 1977), *quoted in Gulf Oil*, 452

6

U.S. at 102. Thus, in the case at bar, Menu Foods may communicate with proposed class members.

**B.    Menu Foods' Communications with Proposed Class Members Have Been Proper and Are in No Way Misleading or Coercive.**

Menu Foods' communications with proposed class members have consisted of answering and returning telephone calls; directing claimants to Menu Foods' website, the Food and Drug Administration's (FDA) website and Crawford's website; asking questions about the complained-of products and/or incidents utilizing the Data Collection Form; and instructing claimants how to preserve the product for evidentiary purposes. *See* Exhibit C.  Contrary to Plaintiffs' contention, Menu Foods' communications have not jeopardized the ability of claimants to participate fully and fairly in the pending class action lawsuits.  Menu Foods never pro-actively contacted pet owners. *See* Exhibit C.  Menu Foods never purported to advise pet owners of their legal rights and/or how they should proceed with their claim. *See* Exhibit C. Menu Foods has not made any offers to settle with claimants.  Finally, Menu Foods never solicited opt-outs from the pending class action lawsuits.

Plaintiffs contend that Menu Foods seeks to effect the decision of pet owners to participate in the pending class action litigation and/or undermine the putative class action plaintiffs cooperation with and/or confidence in class counsel.  Yet, in their motion to show cause for a protective order, Plaintiffs fail to present any evidence of "actual or threatened misconduct of a serious nature," as required under Rule 23(d). *Manual for Complex Litigation, Second,* Section 30.24 (1985).  For all the foregoing reasons, Menu Foods' communication with pet owners has been proper.

7

C.   **Cases Cited in Plaintiffs' Memorandum of Law Are Mischaracterized and Out of Context.**

In support of their argument that Menu Foods' communication is improper, Plaintiffs cite and compare cases that involve instances of blatant misconduct, *i.e.* where defendants sought to influence the decision of absent class members on whether to participate in the class action, or undermine their cooperation and confidence in class counsel. *Kleiner v. First Nat'l Bank of Atlanta*, 751 F. 2d 1193 (11th Cir. 1985) (defendant bank conducted a covert telephone campaign with the explicit purpose of soliciting opt-outs from potential class members while the judge was on vacation and after the judge had ordered that its communication was limited to the depositions of five class members); *Erhardt v. Prudential Group Inc.,* 629 F. 2d 843, 845 (2d Cir. 1980) (defendant sent letters commenting on the pending litigation to class members, warning them of the costs of the suit and urging them not to participate); *In re Currency Conversion Fee Antitrust Litig.,* 361 F. Supp. 2d 237, 252 (S.D. N.Y. 2005) (defendant banks sent a notice to cardholders that their agreement included an arbitration clause which forfeited cardholders' rights to participate in the pending class litigation).

Menu Foods' communications in the present matter are entirely different than the communications in *Kleiner, Erhardt* and *In re Currency Conversion Fee*. Menu Foods in no way has affected the ability of potential plaintiffs to participate in the pending lawsuits. Menu Foods has never purported to advise claimants of their legal rights, and has not made any comments, either for or against, the pending lawsuits. Menu Foods' Data Collection Form in no way forfeits an individual's right to proceed with the pending lawsuits. *See* Exhibit B. Further, Menu Foods has not solicited any releases, settlements or opt-outs from claimants.

8

Plaintiffs also mischaracterize the case law presented in support of Menu Foods is conducting unauthorized discovery. Plaintiffs contend that *Kern v. Siemens Corp.*, 393 F. 3d 125 (2d Cir. 2004) stands for the proposition that "[c]ourts have disallowed discovery questionnaires to the class 'because they may constitute a de-facto 'opt-in' provision." This case, however, is taken out of context. The Court, in determining whether an "opt in" class could be certified, found that a class member's failure to file a document in the nature of a request should not, in the initial stages of litigation, preclude him from being considered a member of the class. *Id.* In essence, the Court found that mandatory questionnaires which would require class members to take positive action to remain in the lawsuit is not permissible and contrary to the opt out policy of Rule 23. *Id.*

Here, Menu Foods never mandated that claimants answer the questions listed in the Data Collection Form. Refusing to complete the Data Collection Form would have had no impact on a pet owner's ability to participate in the pending class action lawsuits. Furthermore, Menu Foods is not attempting to create an opt-in class. For these reasons, Menu Foods' communications have been proper.

**D.    Plaintiff's Motion Seeks to Deny Pet Owners the Right to Enter into Individual Settlements and Is an Apparent Attempt at Forum Shopping for Purposes of MDL Consolidation.**

Plaintiffs' counsel is launching a preemptive strike to preclude settlement discussions between Menu Foods and pet owners prior to the commencement of such discussions. Rather than seeking to protect the interests of the pet owners they claim to represent, Plaintiffs' counsel is seeking to deny pet owners their right to enter into individual settlements with Menu Foods. Plaintiffs' counsel would prefer to have pet owners wait months or years for a dubious attempt at

9

class certification to make its way through District and Circuit courts, rather than pursue settlement discussions with a company that has publicly indicated a desire to provide reasonable compensation to affected pet owners. Plaintiffs' counsel's obstructionist tactic is insupportable and would, if successful, unjustly deny Menu Foods and willing pet owners the right to enter into individual settlements. Such a tactic would likely result in hardship for the very individuals whose rights Plaintiffs' counsel purports to protect.

Further, Plaintiffs' counsel's filing of the present motion at this time before this Court is a transparent attempt to advance this matter ahead of the nearly ninety (90) other class action lawsuits pending across the country. Plaintiffs' motion is also an improper attempt to sway the JPML in its decision as to the appropriate venue for MDL consolidation. Undoubtedly, Plaintiffs' counsel will argue that this Court's consideration of the present Motion puts it at an advantage of all other venues thereby making consolidation in the District of New Jersey the most appropriate forum. While it is likely that the JPML will see this tactic for what it is and decide the question of MDL venue on the appropriate factors, such an approach should not be condoned by this Court.

**E.    Menu Foods' Claim Packet Contains Sufficient Information for Pet owners to Make an Informed Decision Regarding Settlement.**

Menu Foods has prepared and intends to send out a settlement notice to claimants who have communicated with Menu Foods. A proposed offer to settle with individual class members requires a lesser degree of judicial scrutiny than a proposed class action settlement. *In re General Motors*, 594 F. 2d 1106, 1139 (7th Cir. 1979). In contrast to judicial examination of a proposed class action settlement which entails consideration of the fairness of the settlement itself, judicial examination of the offer to settle individual claims largely entails consideration

10

only of the accuracy and completeness of the disclosure. *In re General Motors,* 594 F. 2d at 1140. The court's concern in reviewing an individual settlement is not to see that the settlement is fair, but that the offer provides sufficient data to enable each potential class member to make an informed choice. *Id.* at 1139-40. Specifically, under *In re General Motors,* an offer to settle made to individual class members must contain sufficient information to enable a class member to determine: (1) whether to accept the offer; (2) the effects of settling; and (3) the available avenues for pursuing the claim if he or she does not settle. *In re General Motors,* 594 F.2d at 1139.

The *Keystone* Court adopted the three-pronged standard for evaluating whether an offer to settle contains sufficient information for claimants to make an informed decision regarding settlement initially articulated in *General Motors. Keystone,* 238 F. Supp. 2d 151,155 (D.D.C. 2002). In *Keystone,* the defendant distributed a packet of materials presenting a settlement offer to proposed class members. The *Keystone* Court held that the defendant was permitted to communicate with proposed class members and that the settlement offer was not misleading. *Id.* at 156.

Here, Menu Foods' letter to pet owners meets the *General Motors* test. First, the letter provides sufficient information to enable a pet owner to assess the settlement offer. *See* Exhibit D. The letter describes the status of the litigation and notes the existence of pending class action lawsuits. *See* Exhibit D. Second, the letter clearly explains the effects of settling. *See* Exhibit D. It indicates that if the pet owner agrees to accept the proffered settlement, the pet owner would be releasing any and all claims for damages the pet owner may have arising out of the recall, or relating to the injury or death of their pet. *See* Exhibit D. Further, Menu Foods

11

recommends that the pet owner obtain the advice of counsel if the pet owner has any questions regarding the effects of settling. *See* Exhibit D. Third, the letter states that the pet owner has the option of contacting one of the numerous plaintiffs' attorneys who have filed class action lawsuits. *See* Exhibit D. Menu Foods' letter even supplies a list of plaintiffs' attorneys who have filed class action lawsuits to pet owners. *See* Exhibit D.

The case of *Jenifer v. Delaware Solid Waste Authority*, 1999 U.S. Dist. LEXIS 2542 *9 (D. Del. 1999), which Plaintiffs cite in their motion, confirms that Menu Foods may communicate with claimants in this manner. In *Jenifer*, plaintiffs sought an injunction barring defendants from communicating with potential class members. *Jenifer*, 1999 U.S. Dist. LEXIS 2542 at *9. Plaintiffs alleged that defendants "contacted members of the potential class and offered them a coercive 'financial deal' in exchange for a release of liability." *Id.* In coming to its holding, the *Jenifer* court found that defendants' communications related to a business proposition that the putative class members were free to reject. *Id.* The *Jenifer* court cited to the Manual for Complex Litigation, which provides that "defendants [are] ordinarily not precluded from communications with putative class members, including discussions of settlement offers with individual class members before class certification." *Id.* The court held that plaintiffs had not set forth sufficient evidence to demonstrate that defendants' communications with potential class members were improper, so as to warrant interference with defendants' right to engage in commercial speech with plaintiffs. *Id.* The *Jenifer* court merely required defendants to notify putative class members of the pendency of the class action before agreeing to the release. *Id.*

Similar to *Jenifer*, Menu Foods' communications relate to a business proposition that claimants are free to reject. Menu Foods is committed to pet owners and its settlement offer is in

response to those pet owners who seek reimbursement from Menu Foods, but do not want to participate in litigation. Like *Jenifer*, Plaintiffs have not set forth any evidence to warrant interference with Menu Foods' right to engage in commercial speech with these claimants. Further, Menu Foods has gone above and beyond its obligation to notify claimants of the existence of class action lawsuits, and is planning to give claimants the names and contact information of attorneys in their locale who have filed class action lawsuits. *See* Exhibit D. Accordingly, Menu Foods' Claim Form enables claimants to make an informed decision regarding settlement.

## IV. CONCLUSION

Plaintiffs' request that this Court lift the Stay Order that was entered three (3) business days prior to the filing of this Motion is unreasonable and should be denied. Plaintiffs only recently agreed to the Stay Order. The Motion should be stricken pending a determination by the Judicial Panel on Multidistrict Litigation regarding transfer and consolidation. In the alternative, Plaintiffs' Motion should be denied because Menu Foods' communications and planned communications with claimants are proper and in no way impedes upon a claimant's right to pursue litigation. Menu Foods' proposed letter to claimants regarding settlement provides sufficient information to enable the claimant to evaluate the offer and outlines other available avenues if the claimant does not wish to settle.

WHEREFORE, Defendants, MENU FOODS LIMITED, MENU FOODS INC. and MENU FOODS MIDWEST CORPORATION, respectfully request this Court enter an order denying Plaintiffs' request to lift the Stay Order solely for this Motion and striking Plaintiffs' Motion pending a determination by the Judicial Panel regarding transfer and consolidation. In

the alternative, Defendants respectfully request this Court to deny Plaintiffs' Motion for an

Order to Show Cause Why a Protective Order Should Not Be Issued.

Respectfully Submitted,

By:_____
            Gerald H. Hanson

*Counsel for "Menu Foods" collectively*
Hill Wallack, L.L.P.
202 Carnegie Center
Princeton, N.J. 08543-5226
609-734-6390
609-452-1888 (Fax)

14